THE PEOPLE v. CALVIN W. GIBBS.[1]

*Criminal law—Practice—Suggestion of member of bar that respondent plead—Seduction defined—Charge to jury—Evidence.*

1. A suggestion to the court that a respondent whose trial is about to commence has not pleaded *formally* to the information is one proper to be made by any member of the bar as *amicus curiæ.*

2. In a criminal prosecution for seduction, the age, experience, artfulness, and blandishments of the offender, and the youthfulness, innocent, guileless, and confiding nature of the injured party, will always be found to enter largely into the consideration of the acts of the parties involved in the investigation; and the largest latitude consistent with safety should be allowed in taking the testimony having any tendency to develop the material facts in the case.

3. The charge of the court (see opinion), is held to have been well conceived, and to have carefully brought before the jury all the law proper for their consideration in passing upon the testimony in the case.

4. A false promise of marriage, under our statute, is not a necessary element in the influence exerted through the wiles, artifice, and deception used by the seducer, but any other subtle device or deceptive means, involving the same moral turpitude, used by him in accomplishing the same criminal result, is all that is necessary to constitute the crime.

Exceptions before judgment from Kent. (Montgomery, J.) Argued April 25, 1888. Decided May 23, 1888.

Respondent was convicted of seduction. Affirmed, and court directed to proceed to judgment.

*J. A. Fairfield* and *L. A. Ward* (*Birney Hoyt,* of counsel), for respondent.

*Moses Taggart,* Attorney General, and *Samuel D. Clay,* Prosecuting Attorney, for the people.

[1] The respondent was pardoned after a short imprisonment.

[The points of counsel are stated in the opinion, which contains so full a citation of authorities that further amplification of the law is omitted.—REPORTER.]

SHERWOOD, C. J.   The respondent was charged with the crime of seducing and debauching Annie Bunn on March 31, 1886, who at the time was under 15 years of age, and lived at home with her parents.   The respondent was a married man, and a near neighbor of the father of the injured girl, and was 56 years old.   He was tried in the Kent circuit court, and convicted.   The case is now before us on exceptions before judgment for review.   Fifty-eight errors are assigned upon the record presented.

The first error relates to a request of George W. Thompson, an attorney of the court, to be permitted to assist in the prosecution of the respondent; he having before had something to do with the prosecution, and having been employed and paid by the mother of the girl.   This request was denied by the court.   Mr. Thompson then said to the court:

"If I cannot appear in this case, I ask, on behalf of the people, that this man now plead to this information [he having pleaded only *pro forma,* before that time, 'Not guilty'] ; I now suggest that he be required to plead to the information."

Counsel for the defendant thereupon objected to Thompson's addressing the court, and the court replied:

"If he is barred, he has made a very sensible remark."

The court ordered the defendant to then plead, and thereupon the defendant's counsel objected to the proceedings. The respondent then pleaded, "Not guilty."   Thompson had taken a part on a former trial in aiding the prosecution; but, after the foregoing colloquy, he was not allowed to act or say anything further in the case.   No exception seems to have been taken to this proceeding, or, rather, to what was said

by the court; and, if it had been, we think it should not be sustained. The suggestion of Thompson was one which might very properly have been made, as *amicus curiæ*, by any member of the bar.

The prosecution, in making out their case, were permitted to give testimony tending to show that the respondent commenced his familiarities with the girl more than a year before the act was committed charged in the information; that he frequently visited her father's house when the parents were absent, and participated in games and sports with the children; that he frequently made Annie presents, thereby gaining her friendship and confidence, and on several of these occasions he forced her into the bed-room, and attempted to accomplish his criminal purpose, which finally culminated, on the occasion referred to in the information, in the accomplishment of this child's ruin. In putting in this testimony, when the girl was upon the stand, she was asked, "Had he before this made you any presents?" This was objected to as immaterial. The testimony was properly admitted. She also gave testimony showing that force was used by the respondent on each occasion, against the like objection of counsel for respondent. We see nothing objectionable in this.

The "seducing and debauching of the unmarried female" was the crime for which the respondent was being tried. It consisted of the means used by him to induce this young girl to yield and surrender to him her chastity and her virtue; and such means always include all the acts, artifices, influences, promises, enticements, and inducements, calculated, under all the circumstances of the case being considered, to accomplish that object; and all testimony having any tendency to establish any of these should be admitted when offered to prove the criminal conduct. We find nothing in the testimony received going beyond this.

In all such cases, the age, experience, artfulness, and bland-

ishments of the offender, and the youthfulness, innocent, guileless, and confiding nature of the injured party, will always be found to enter largely into the consideration of the acts of the parties involved in the investigation; and the largest latitude consistent with safety should be allowed in taking the testimony having any tendency to develop the material facts in the case. A proper regard for the protection of female virtue, and the welfare of society, can never require less

The record tends to show that at first force as well as strategy was used by the respondent in bringing this child within his seductive grasp, for the purpose of exciting in her impure and carnal desires. The testimony of the girl is to the effect that while she, at all times, opposed and resisted the respondent's lecherous approaches, she did on the last occasion, after he had got her into the bed-room at her father's house, yield to his seductive influence and persuasions; that on this occasion he promised he would buy her clothing, which he never did, but that he finally succeeded in making complete his crime.

We find no error in receiving in evidence the conversation between the mother and two daughters, Annie and Maggie, given by Mrs. Bunn, explanatory of what was drawn out by counsel for the respondent concerning this last transaction on the cross-examination of Maggie when she was upon the witness stand.

All the testimony tending to show that the respondent was not absent at Mr. Tatem's lecture, where the respondent and his witnesses claim that he was, and when Annie testifies he was at her father's house, vigorously prosecuting his efforts to seduce her, was entirely proper, and the circuit judge committed no error in so holding.

Some fault is found with the argument made by the prosecuting attorney to the jury at the close of the trial; but after a careful inspection of what appears in the record, we are not

able to say that the respondent was in anywise prejudiced by those portions of the argument to which exception was taken.

Six requests to charge were made by respondent's counsel.

Several of these were substantially given, and all that was proper in the others to be given was covered by the general charge.

A very large number of exceptions were taken to the charge of the court, but a careful examination of the instructions given fails to disclose any error.

Counsel for defendant asked the court to charge the jury:

"If you find from this evidence that the girl, Annie Bunn, did yield then and there, viz., on March 31, at the house of Bunn, through the promise of a silk dress, then I charge you that would not be seduction, for that would be no more than any lewd woman might do."

This request was substantially given by the court, and in this connection the court said:

"If you find that the complaining witness yielded simply by reason of that promise, that all that occurred was by reason of making the promise that he would buy her a dress, and that she then yielded to his embraces, this of itself would show that the inducements were not such as to seduce a woman of previous chaste character; but if you find that she was of previous chaste character, and that the giving—making—a promise of a dress, or any other promise, on this or any other occasion, was simply one of the means which he had employed to overcome her reluctance to submit to this act,—to overcome her virtue,—this would and might be one of the means which the jury would have the right to consider as having been employed for the purpose of seducing this girl from the path of virtue.

"And in passing upon the question of whether the means employed, as charged in this case by this prosecution, were such as would be likely to induce a woman of previous chaste character to yield to the sexual embraces of another, the jury have a right to take into account the relation existing between the parties, the age, the respective ages of the parties, and the age of this girl at the time. So, I don't mean to be understood as saying that the means employed and used

in no given case, including the making of gifts, or promise of gifts in the future, are not to be considered by the jury. It will be for the jury to say whether, at the time, the woman was of chaste character, and whether arts were practiced, and whether she was lured from the path of virtue, and her reluctance to the sexual act overcome, by these means. The means used are not material if the arts and persuasions were what caused her to submit."

In defining the crime, and what is necessary to be proved to establish it under our statute as applied to the facts in this case, the court further said:

"Seduction may be defined to be the act of persuading or inducing a woman of previous chaste character to depart from the path of virtue by the use of any species of arts, persuasions, or wiles which are calculated to have, and do have, that effect, and resulting in her ultimately submitting her person to the sexual embraces of the person accused. If, in this case, you find that the girl, Annie Bunn, was before and on March 31, 1886, of chaste character, and virtuous, and if the respondent, by arts, persuasion, and wiles, induced her to depart from the path of virtue, and submit to the sexual embraces at that time, this would constitute seduction. ·

"In order to constitute the offense, it must be shown by the proofs in the cause that on this day, March 31, 1886, this girl yielded her person and her virtue by reason of some artifice, promise, or inducement made by the respondent at the time, and without which she would not have yielded. That, however, should be modified to this extent: That the artifice or inducement need not have been concurrent with the act of sexual intercourse; but if, by insidious and persistent attentions, and by gifts of trifling articles from time to time, he built up such respect for himself, or affection for himself, as to finally and eventually overcome her virtue, ·and induce her to yield by these means, it would not be material that all of these purposes—all of these efforts—may not have been concurrent with the final act of sexual intercourse, or the first act of sexual intercourse which was voluntary on her part.

"Now, as I have said, the act of intercourse must have been voluntary eventually; and, at the time, the complaining witness must have been of a chaste character. Illicit intercourse which takes place in consequence of any reliance on a promise of compensation for a specific act is not seduction.    *    *    *    Some claim is made that, upon former

occasions, the testimony of Annie Bunn had disclosed a state of facts which would be, if anything, rape as distinguished from seduction. You will comprehend, from the definition I have given you of the offense of seduction, that you must be able to say upon the evidence, beyond a reasonable doubt, that the offense was seduction rather than rape, or there can be no conviction in this case upon this charge.

" To constitute seduction there must have been submission; for, if the offense was rape, no conviction can be had upon this record. If the complaining witness was compelled to submit by force, or if she was prevented from resisting by fear of dangerous consequences or great bodily harm,—so strong a fear as to overcome the mind so that she dare not resist,—this would be rape, and not seduction.

" But, to constitute rape, she must not have yielded at any stage of the act; she must have resisted, persisted in her determination and wish to resist, and must have resisted to the utmost, except as she was overcome by fear of dangerous consequences or great bodily harm. * * * If there had been a previous seduction, there could be no conviction here, because it would follow that she was not of chaste character, and sexual act complained of as seduction was not an act which occurred prior to March 31. By this, I mean that if there had been a seduction—an actual seduction— of this girl,—an intercourse had been kept up from time to time,—then this isolated act could not be charged as an act of seduction.

" If illicit intercourse once begins between two parties, it would be incumbent upon the prosecution, before they could charge a second seduction, at least to show affirmatively there had been a reformation. But it may be stated, however, in this connection, that previous acts of intercourse, or attempts at intercourse, which were not completed, but which failed, or acts of intercourse which were consummated by force, or under such circumstances as constitute rape, would not tend to show that she was unchaste at the time. In other words, a woman cannot be charged with unchastity who is by force compelled to yield her virtue—her person—to another."

In the foregoing charge, we find the law applicable to this case well stated, and in accord with the previous decisions of this Court. *People v. Millspaugh*, 11 Mich. 278; *People v. Brewer*, 27 Id. 134; *People v. Clark*, 33 Id. 112; *Lewis v. People*, 37 Id. 518; *People v. Squires*, 49 Id. 487 (13 N. W. Rep. 828);

*People v. Cummons,* 56 Id. 544 (23 N. W. Rep. 215); *People v. De Fore,* 64 Id. 693 (31 N. W. Rep. 585). See, also, 2 Bish. Crim. Law, § 1019; *State v. Bierce,* 27 Conn. 319; *Dinkey v. Com.,* 17 Penn. St. 126; *Carpenter v. People,* 8 Barb. 603; *Com. v. M'Carty,* 4 Penn. Law J. 136; *State v. Boak,* 5 Iowa, 430; *State v. Carron,* 18 Id. 372; *Brown v. Kingsley,* 38 Id. 220; *Leucker v. Steileu,* 89 Ill. 547; *Croghan v. State,* 22 Wis. 444; *Hogan v. Cregan,* 6 Rob. (N. Y.) 150; *Hart v. Walker,* 77 Ind. 331; *Delvee v. Boardman,* 20 Iowa, 446; *State v. Fitzgerald,* 63 Id. 268 (19 N. W. Rep. 202).

A false promise of marriage, under our statute, is not a necessary element in the influence exerted through the wiles, artifice, and deception used by the seducer in taking advantage of the guileless simplicity and confidence of a young girl, and leading her from the path of virtue, in depriving her of her chastity, and accomplishing her ruin; but any other subtle device or deceptive means, involving the same moral turpitude, used by him in accomplishing the same criminal result, is all that is necessary to constitute the crime. The quality of the means used, rather than the kind, is that which characterizes the act, and brings it under the condemnation of the law

We have examined all those portions of the charge excepted to, and find no merit in the exceptions. The charge was well conceived, and carefully brought before the jury all the law proper for their consideration in passing upon the testimony given in the case, and they have found the respondent guilty. It is not in our power to disturb this result.

The circuit court must therefore proceed and give judgment upon the verdict.

CHAMPLIN and MORSE, JJ., concurred.