578

EL PUEBLO DE PUERTO RICO, apelado, *v.* ALEJANDRO GONZÁ-
LEZ MALAVÉ, acusado y peticionario; EL PUEBLO DE
PUERTO RICO, demandante y peticionario, *v.* ÁNGEL L.
PÉREZ CASILLAS y OTROS, demandados y recurridos.

*Números:* CE-85-583,     *Resueltos:* 4 de octubre de 1985
          CE-85-566

*Sandra Santiago Rivera* y *Héctor Santiago Rivera*, abogados del recurrente; *Marcos A. Ramírez Irizarry*, abogado del Senado de Puerto Rico; *Jorge Batlle Ojeda*, de la Sociedad para Asistencia Legal, abogado de los recurridos; *William Fred Santiago*, *Fiscal Especial Independiente*, abogado de El Pueblo.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

"La Ciencia del Derecho no es otra cosa que el arte de lo justo. Ya en el subconciente, ya en el fondo de nuestro ser, se encuentra siempre la valoración: es justo, no es justo." B. Biondi, *La ciencia del Derecho como arte de lo justo*, 9 Anales de la Academia Matritense del Notariado 358 (1957).

I

Con esta perspectiva, como incidente interlocutorio, evaluamos la solicitud del Senado de Puerto Rico para intervenir, como *amicus curiae*, en estos recursos. El debate final versará sobre la procedencia de unas denuncias y una acusación por perjurio formuladas por el Fiscal Especial Independiente, Lic. William Fred Santiago, contra varias personas que prestaron testimonio ante la Comisión de lo Jurídico del Senado

de Puerto Rico en la investigación de los sucesos ocurridos en el Cerro Maravilla, Villalba, el 25 de julio de 1978.

En esta tarea, y por la singularidad del caso resulta más fácil la exposición general de la doctrina científica y la casuística —en mayor o menor grado accesibles de otras jurisdicciones, en apoyo de cualesquiera posiciones— que la fiel y correcta aplicación a los hechos.

Sobre la evolución histórica, desarrollo y perfiles de la institución procesal, denominada *amicus curiae*, no es menester mucha elucidación. Basta remitirnos a nuestros pronunciamientos en *Pueblo ex rel. L.V.C.*, 110 D.P.R. 114 (1980).

■ En esencia, sus características son las siguientes: (1) la comparecencia no se funda en un derecho, sino en un privilegio sujeto a la sana discreción del tribunal; (2) su participación se justifica en casos revestidos de interés público; (3) más que al interés del *amicus curiae*, debe responder a las necesidades del tribunal con el propósito de estar mejor informado, y (4) "no debe darse la intervención para que se convierta en una parte del litigio". Íbid., pág. 129.

■ Aclaramos, sin embargo, que la cuestión no se reduce a delimitar las funciones del *amicus curiae* y el alcance de su intervención a base de unos escasos pronunciamientos judiciales de otras latitudes. Es más seria. A poco profundicemos nos daremos cuenta que tal premisa es limitada. Como método de adjudicación empaña el prisma del jurisprudente para identificar el verdadero problema planteado. ¿Puede el Senado de Puerto Rico en armonía con el debido proceso de ley, comparecer directamente ante este foro en un caso criminal para promover intereses adversos a unos acusados —siendo parte realmente perjudicada— so pretexto de una intervención *amicus curiae* para orientarnos sobre sus méritos y aclarar la "intención legislativa" de una disposición del Código Penal? ¿Plantea su comparecencia un problema de separación de poderes impermisible constitucionalmente?

Las respuestas a estas interrogantes no son sencillas. Su solución no debe ser puro ejercicio académico. Está en juego la esencia de nuestro régimen constitucional tripartita y muy en particular la pureza de nuestro sistema de Justicia Criminal. Explorémoslas.

## II

Primero, en buena metodología decisoria, es menester dejar claro un extremo crucial sobre el carácter de la comparecencia del Senado. Se presenta bajo la rúbrica de un *amicus curiae*, no como parte. Por tal razón, no debemos interpolar al caso la doctrina jurisprudencial que reconoce a las cámaras legislativas capacidad jurídica para acudir, como parte interesada, a los foros judiciales a hacer valer sus prerrogativas constitucionales. *Hernández Agosto* v. *Romero Barceló*, 112 D.P.R. 407, 415–416 (1982). Tal capacidad jurídica, incuestionable como es, sólo resulta relevante en la medida en que el sondeo judicial nos permita auscultar y detectar el verdadero semblante procesal y consecuencias de la comparecencia.

Segundo, no negamos el potencial y la calidad forense del Senado para ilustrarnos su posición. Tampoco, su interés público y legítimo en las resultancias finales de estos litigios. De ambos aspectos estamos conscientes. Precisamente, como demostraremos, esa circunstancia y otras son las que levantan fundadas reservas sobre su procedencia.

Tercero, de su faz la petición del Senado va más allá de un reclamo para revindicar una importante prerrogativa legislativa. El historial y hechos en que se fundan las denuncias y acusaciones criminales presentadas por el Fiscal Especial, Lic. William Fred Santiago, se originan en testimonios alegadamente falsos presentados ante la Comisión de lo Jurídico del ente senatorial. El interés es patente e intenso. De hecho, el peticionario en *amicus curiae*, el Presidente del Senado, Hon. Miguel Hernández Agosto, conforme la Regla XII (3) de ese cuerpo, es miembro ex oficio de la Comisión de lo Jurí-

dico. La alta Cámara está tan profundamente involucrada, que en las denuncias en el recurso CE-85-566, figuran entre los testigos de *cargo* el pasado Secretario del Senado Lic. Hipólito Marcano, y el hoy Secretario Lic. Ramón García Santiago.

■ Ante este trasfondo irrefutable, si concentramos en la sustancia y no en la forma, la comparecencia del Senado trasciende la etiqueta de un *amicus curiae*. Esta conclusión no es producto de inferencias ni especulaciones. Así lo admite el Senado al enfatizar su criterio de que la institución de *amicus curiae* ha perdido su característica de neutralidad. En el fondo, no hay intereses encontrados entre los planteamientos del Fiscal Especial Independiente y el Senado. De hecho, la postura escrita adelantada del Senado es que los dictámenes absolutorios de las denuncias por perjurio son equivocados. Interesa que sean revocados. Dicho de otro modo, su proposición es que los hechos alegados en las denuncias formuladas por el Fiscal Especial Independiente bajo el Art. 225 del Código Penal tipifican el delito de perjurio. Curiosa y coincidentemente, ésa es la misma posición y súplica asumida en instancia y ante nos por el Fiscal Especial Independiente. ¿Existe seriamente alguna diferencia esencial entre ambas? Nótese que las denuncias presentadas por el Fiscal Especial Independiente son para castigar el supuesto uso de la mentira ante la Comisión Senatorial, esto es, redimir un atentado al desenvolvimiento normal y velar por la integridad de las investigaciones senatoriales. A corto y largo plazo, es manifiesto e innegable el común denominador de intereses.

A poco reflexionemos nos percatamos que esta realidad sitúa indefectiblemente al Senado en un papel de auténtico adversario, coprotagonista en la función clásica de fiscal acusador. El precedente es peligroso e impermisible. El proceso criminal está comenzado. Su intervención se aparta del trámite usual y ordinario en el encauzamiento y control de cualquier caso penal. Plantea serias interrogantes, en particular, la vi-

sión rectora que la Comisión le atribuye a cada rama de gobierno: Asamblea Legislativa, legislar; Ejecutivo, acusar, y Judicial, interpretar y adjudicar.

Nos apartamos inexcusablemente de ese tratamiento y postulado si con ánimo liberal excesivo permitimos un desdoblamiento en dos comparecencias con idéntico fin: de un lado el Estado Libre Asociado a través de su representante oficial designado, el Fiscal Especial Independiente, y del otro, con igual propósito separadamente, el Senado de Puerto Rico. Ese dualismo procesal presenta graves peligros. ¿Proyecta la tenebrosa figura ya superada por la historia del juez inquisidor, juzgador de sus propios actos? El cuadro presente no está muy distante de semejante condición. Una rama legisla y tipifica un delito. El Ejecutivo ejercita la acción criminal. Luego el Poder Legislativo quiere fundirse junto al Ejecutivo como parte acusadora, y como auxiliar del tribunal, en su función de interpretar la ley. Este binomio, como puede apreciarse tiende a trastocar el delicado equilibrio de poderes de las ramas de gobierno. En lo que a los imputados concierne, los colocaría en obvia desventaja al amparo de la cláusula constitucional del debido proceso de ley, al "no mantener un balance preciso, claro y verdadero entre el estado y el acusado". *Pueblo* v. *Toro Goyco*, 84 D.P.R. 492, 497 (1962), citando a *In re Murchison*, 348 U.S. 894 (1954).

■ Cuarto, bajo el estado actual de derecho, la intervención directa del Senado es dudosa. "En su perspectiva histórica y funcional, el Departamento de Justicia representa la institución que en nuestro sistema de gobierno democrático tiene el deber de velar y hacer cumplir las leyes. Bajo la estructura constitucional —organizada bajo la doctrina de 'separación de Poderes' y de 'pesos y contrapesos'— y el derecho vigente constituye la institución de la Rama Ejecutiva que ostenta la representación del Estado en las causas criminales y civiles." *Informe de la Comisión para el Estudio de la Fiscalía y Representación Legal del Estado* de 26 de septiem-

bre de 1976 sometido al Consejo sobre la Reforma de la Justicia, pág. 1.

De ordinario la comparecencia y representación del Estado recae sobre el Secretario de Justicia. Éste directamente, o a través de sus fiscales, tiene la misión y representación del Estado en todos los casos criminales. 3 L.P.R.A. sec. 72. Sin que ello implique criterio apriorístico sobre algunos de los planteamientos en los recursos, el Art. 34 del Código Político —al establecer el procedimiento "en caso de que cualquier testigo incurra en perjurio en una declaración ante un organismo legislativo"— remite, por conducto del Presidente o Vicepresidente de la Cámara correspondiente el asunto "al Secretario de Justicia, quien tendrá el deber de formular las acusaciones correspondientes". 2 L.P.R.A. sec. 154(1) y (2). En los asuntos penales que se tramitan en grado de apelación ante este Tribunal Supremo, por regla general, corresponde al Procurador General representarlo.

■ Aun en los casos en que se cuestiona la constitucionalidad de un estatuto, es el Poder Ejecutivo, por mediación del Secretario de Justicia, quien interviene en el proceso y acción. Por tal razón, la Regla 21.3 de Procedimiento Civil de 1979 prevé, en esas situaciones, que se notifique a e intervenga este último funcionario. Al presente no existe disposición legal alguna que expresamente conceda tal autoridad a la Asamblea Legislativa. La Regla 43 de nuestro Reglamento tampoco la contiene.(1) Es materia de discreción judicial. 4 L.P.R.A., Ap. I-A.

■ Quinto, la intervención y participación del Senado como *amicus curiae* es contraria al propio espíritu y texto de la Ley Núm. 1 de 18 de enero de 1985 que creó el cargo, fun-

---

(1) La Regla 36.4 del Reglamento del Tribunal Supremo de Estados Unidos autoriza la intervención del *amicus curiae* entre otros, al gobierno de Estados Unidos, únicamente a través (*sponsored*) del Procurador General.

ciones y ámbito del Fiscal Especial Independiente. Mediante la misma el Senado, la Cámara de Representantes y el Poder Ejecutivo delegaron en dicho funcionario, en la forma más amplia concebible, toda investigación y procesamiento por violaciones a la Ley Penal con relación a los incidentes ocurridos en el Cerro Maravilla, Villalba, el 25 de julio de 1978. ¿Por qué menoscabar ese encargo?

Sexto, la promulgación de esta pieza legislativa es factor singular negativo en la determinación sobre el *amicus curiae*. Nos referimos a las peculiaridades y propósitos que animaron el diseño del cargo de Fiscal Independiente. Se desprenden de su Exposición de Motivos, en lo pertinente:

> Las circunstancias excepcionales que rodean estos sucesos han despertado un clamor unánime para que se realice una investigación imparcial, eficiente y completa, y para que se fije la responsabilidad criminal que corresponda por dichas muertes y su posterior encubrimiento. Dicha investigación necesariamente ha de envolver el examen de las actuaciones de los funcionarios de mayor rango en la investigación criminal dentro de la jerarquía gubernamental. *Las graves irregularidades descubiertas por el Senado en las investigaciones criminales previas, enfatizan la necesidad de evitar la más leve sombra de conflicto de intereses entre los investigadores y los investigados, y de separar dicho proceso de las pasiones político-partidistas.* (Énfasis suplido.)

¿Adelanta la comparecencia del Senado en estas causas su intención de divorciarlas de las pasiones político-partidistas?

■ Séptimo, específicamente el Art. 3, inciso 11, de la mencionada ley facultó al Fiscal Especial —con carácter exclusivo— a "representar al Estado Libre Asociado *en todos aquellos asuntos bajo su encomienda en que sea parte o esté interesado el Estado Libre Asociado y que se tramiten en grado de apelación o en cualquier otra forma ante el Tribunal Supremo de Puerto Rico* o ante los Tribunales Federales de los Estados Unidos". El Art. 7 reconoció que dicho Fiscal no

estaría sujeto a la supervisión y autoridad de ningún otro funcionario o ente del Estado.

Ante esta encomienda y delegación expresa, ¿puede válidamente argumentarse que el Senado, como parte del Estado Libre Asociado, no puso en manos del Fiscal Especial Independiente el procesamiento de estas causas? ¿Es que no tiene sentido jurídico y orientación procesal alguna la Sec. 18, Art. VI de la Constitución, mandatoria de que "toda acción criminal en los tribunales del Estado Libre Asociado se instituirá a nombre y por autoridad de 'El Pueblo de Puerto Rico' mientras otra cosa no se dispusiere por ley"? Invocar su carácter de *independiente* para sostener que esa cualidad le confiere y viabiliza la comparecencia aparte del Senado, como *amicus curiae*, es un *non sequitur* que desnaturaliza los preceptos elementales en que se funda esta legislación especial. (²)

Nuestra obligación judicial es darle plena virtualidad al mandato legal del Ejecutivo y toda una *Asamblea Legislativa*. Esta última responde a una estructura bicameral. La política pública y la intención legislativa se investigan en los trámites, debates, informes y finalmente en los textos culminantes de los estatutos. La voluntad legislativa no es materia de alegatos directos *a posteriori* por uno de sus ilustres cuerpos, mucho menos en casos criminales. "Declarar lo que es la ley o lo que ha sido es una facultad judicial; declarar lo que la ley será es legislativa." *P.R. Tobacco Corp.* v. *Buscaglia, Tes.*, 62 D.P.R. 811, 823 (1944).

Aunque al solicitar intervención como *amicus curiae* no es el propósito del Senado debilitar el carácter de funcionario *independiente* que inspiró la promulgación del estatuto, admitir esa comparecencia pondría en entredicho ese mandato. ¿Es

---

(²) No está bajo consideración, y nadie, inclusive el Senado, ha sugerido que el Fiscal Especial Independiente no esté cumpliendo satisfactoriamente con las obligaciones impuéstasle por el estatuto. Por ende, no tenemos que expresarnos sobre las alternativas procesales que pudiera tener la Asamblea Legislativa en semejante situación.

que el Fiscal Especial Independiente no está en condiciones de ilustrarnos sobre la intención legislativa? ¿Es que carece de acceso a fuentes auxiliares tradicionales tales como informes de comisiones, debates y ponencias que de ordinario están fácilmente disponibles, con un mínimo de diligencia, al público en general?

### III

Finalmente, tanto en la teoría como en la práctica, no podemos olvidar nuestro diseño gubernamental. Los tres poderes (Legislativo, Ejecutivo y Judicial) tienen unos radios de acción independientes. Ante nos tenemos que adjudicar derechos cuya solución puede acarrear la privación de la libertad de unas personas. No estamos resolviendo un problema por canales burocráticos típicos de una gestión interagencial, en que cabe una visión administrativa para facilitar puntos de vista sobre las importantes consideraciones de política pública. Aun bajo la tesis del Senado, de que el *amicus curiae* no tiene que ser neutral, definitivamente el principio de neutralidad de la magistratura es pilar de la Rama Judicial. El respeto a que es acreedor el Senado no es fundamento para desestabilizar el equilibrio, aun en apariencia, de la estructura de nuestro sistema de vida democrático. Menos para exponer a posibles infracciones constitucionales los derechos de unos acusados, cualesquiera que sean los delitos por los cuales son encausados. La solicitud del Senado de intervenir no se da en abstracto sino concretamente al lado del Fiscal Especial Independiente y frente a los acusados. Su pretensión procesal persigue un pronunciamiento judicial para que prevalezcan los cargos criminales. La intensa publicidad y discusión que ha generado este asunto no es fundamento para sobrecargar innecesariamente de un lado la balanza de la justicia.

La deferencia institucional hacia las otras ramas de gobierno no es incompatible con el reconocimiento genuino por el Poder Judicial de una diferencia constitucional. "Es éste

el único régimen que se complace en el vigor fecundante de las diferencias mantenidas en el marco de una lealtad básica a los principios y a la metodología de la democracia. Las diferencias y los conflictos no perturban la solidaridad de los seres humanos en el bien común sino que, por el contrario, la fortalece y afianza." 4 Diario de Sesiones de la Convención Constituyente 2562–2563 (1951).

La solicitud del Senado va dirigida al ejercicio de nuestra discreción. "Para el jurisprudente, el concepto discreción, aun con referencia a una potestad de abolengo constitucional que no está específicamente reglada, necesariamente ha de nutrirse de un juicio racional apoyado en la razonabilidad y fundamento en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna. Como fuente integral del proceso de decisión que contribuye a dar sentido a la ley y a concretar en la realidad derechos individuales y colectivos, el uso por excelencia de un poder discrecional, intenta establecer un balance moral entre los polos opuestos en que se debaten algunas de las controversias humanas: el bien y el mal; la juridicidad y la violencia; *la legalidad aparente y la ventaja indebida; lo prudente y lo irrazonable; la paridad y la desigualdad;* lo espiritual y lo material; lo racional y lo pasional; y, la opresión y la libertad." (Énfasis suplido.) *Santa Aponte* v. *Srio. del Senado,* 105 D.P.R. 750, 770 (1977).

Esta óptica expone lo complejo y difícil que a veces resulta configurar y ejercer la discreción judicial. Ilustra en toda su magnitud la valoración y dinámica íntima en que se debate la conciencia del jurista. La misión es más delicada cuando su ejercicio recae sobre un pedido cuya génesis es de un cuerpo tan augusto y reverente como el Senado de Puerto Rico.

Sin embargo, en los anales del país, difícilmente existe otro caso en que los factores constitucionales, estatutarios y fácticos concurrentes aconsejen respetuosa y prudencialmente negar la intervención de un *amicus curiae. El inventario final*

*de las interrogantes y factores expuestos nos mueven a proveer sin lugar a la solicitud de amicus curiae del Senado. Se impone esta conclusión, como única armonizable con el marco conceptual, lenguaje y espíritu de nuestra Constitución y leyes.*

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Hernández Denton emitió opinión disidente. El Juez Asociado Señor Rebollo López no intervino. La Juez Asociada Señora Naveira de Rodón se inhibió.

— O —

Opinión disidente del Juez Asociado Señor Hernández Denton.

El pasado 3 de septiembre el Fiscal Especial Independiente, Lic. William Fred Santiago, presentó ante este Tribunal una solicitud de certificación en el caso de *Pueblo* v. *Pérez Casillas*. El 12 de septiembre de 1985 acordamos expedir el mandamiento de certificación al Tribunal Superior, Sala de Utuado, y consolidar este caso con el de epígrafe, *Pueblo* v. *González Malavé*. En esa ocasión, sin embargo, pospusimos la consideración de la solicitud de intervención como *amicus curiae* sometida el 3 de septiembre de 1985 por el Presidente del Senado, Hon. Miguel Hernández Agosto, en representación del Senado de Puerto Rico. En dicha solicitud se pide que se le conceda a este cuerpo la oportunidad de participar como *amicus curiae* por las siguientes razones:

> El Senado de Puerto Rico entiende que este caso plantea cuestiones revestidas de un alto interés para el poder legislativo y por ende, para todo el país. Motivado por el gran efecto detrimental que tiene para las funciones legislativas la decisión del Tribunal de Distrito en el caso de autos, el Senado de Puerto Rico le solicita a este Honorable Tribunal que a tenor con la Regla 43 de su Reglamento le permita intervenir como "amicus curiae" para ilustrar al Tribunal sobre las importantes consideraciones de política pública que justifican que se expida el auto de certificación solicitado.

El 12 de septiembre de 1985 la representación legal de los nueve acusados presentó una moción en oposición a solicitud de intervención como *amicus curiae* y alegó que a la luz de las manifestaciones públicas expresadas por el Presidente del Senado, la participación de este cuerpo sería como parte interesada y que de esta manera pretendía el Senado "ejercer la función de legislar y a la vez la de interpretación de las leyes, función que le corresponde a la Rama Judicial".

Por las razones que expongo en este escrito disiento de la opinión suscrita por la mayoría de este Tribunal. Entiendo que esta opinión es contraria al desarrollo histórico de la figura del *amicus curiae* y tiene el efecto real de cerrar nuestras puertas a otra rama de gobierno en un asunto de importancia para el país y especialmente para este cuerpo.

### I

Aunque en Estados Unidos el Tribunal Supremo federal y los tribunales apelativos de los distintos estados con frecuencia permiten la participación de organizaciones y entidades como *amicus curiae* para participar en controversias de interés público, en Puerto Rico en raras ocasiones tiene este Tribunal la oportunidad de determinar sobre los méritos de una solicitud de una parte interesada en comparecer. De hecho, la única ocasión en que nos hemos expresado sobre la figura del *amicus curiae* fue en *Pueblo ex rel. L.V.C.*, 110 D.P.R. 114 (1980). Allí la petición de *amicus curiae* fue hecha al tribunal de instancia. En estas circunstancias es necesario examinar la historia de la figura del *amicus curiae* en otras jurisdicciones para entender su importancia, su desarrollo y su utilidad para los tribunales.

Aunque la figura del *amicus curiae* nos llega por vía de la experiencia norteamericana, el origen de esta figura jurídica es del Derecho romano. S. Krislov, *The Amicus Curiae Brief: From Friendship to Advocacy*, 72 Yale L.J. 694 (1963); F. Harper y E. Etherington, *Lobbyists Before the*

*Court*, 101 U. Pa. L. Rev. 1172, 1176 (1953) ; E. Angell, *The Amicus Curiae American Development of English Institutions*, 16 Int'l & Comp. L.Q. 1017 (1967). Para algunos sus orígenes se encuentran en la figura del *consiliari* romano. 1 *Bouvier's Law Dictionary* 188 (3ra ed. 1914).

En Inglaterra su uso se remonta a varios siglos atrás; Krislov, *op. cit.*, págs. 694–697. Nota, *Amicus Curiae Participation—At the Court's Discretion*, 55 Ky. L.J. 864 (1967) ; Angell, *op. cit.*, págs. 1017–1018. *The Protector* v. *Geering*, 145 Eng. Rep. 394 (Ex. 1656) ; *Coxe* v. *Phillips*, 95 Eng. Rep. 152 (K.B. 1736). En Estados Unidos se ha utilizado desde 1812. *The Schooner Exchange* v. *McFaddon*, 11 U.S. (7 Cranch) 116 (1812) ; *Green* v. *Biddle*, 21 U.S. (8 Wheat) 1, 17, (1823) ; *Florida* v. *Georgia*, 58 U.S. (17 How) 478 (1854). Por ejemplo, en *Green* v. *Biddle*, supra, el Tribunal Supremo permitió que Henry Clay participara como *amicus curiae* porque los jueces sospechaban que había colusión entre las partes.

En sus orígenes el *amicus curiae* era un "amigo" del tribunal cuya función era la de ilustrar a éste sobre diferentes puntos de Derecho. La posición del *amicus curiae* era de neutralidad. No defendía a ninguna de las partes en controversia. No obstante, aun cuando hoy día la participación de un *amicus curiae* es una determinación discrecional del tribunal y no un derecho, su función en el proceso judicial ha dejado de ser la de un mero ente neutral. *Pueblo ex rel. L.V.C.*, supra, pág. 127; *Strasser* v. *Doorley*, 432 F.2d 567, 569 (1970). Krislov, *op. cit.*, págs. 697–704; K. O'Connor y L. Epstein, *Court Rules and Workload: A Case Study of Rules Governing Amicus Curiae Participation*, 8 Just. Sys. J. 35 (1983) ; Harper y Etherington, *op. cit.;* H. Abraham, *The Judicial Process*, 4ta ed., Nueva York, Oxford U. Press, 1980, págs. 250–251. El *amicus curiae* hoy día es generalmente un defensor de causas con un interés específico en el caso. Angell, *op. cit.*, págs. 1020–1021; Nota, *Private Attorneys—General: Group*

*Action in the Fight for Civil Liberties,* 58 Yale L.J. 574
(1949). De hecho, varias agrupaciones de interés público uti-
lizan continuamente el mecanismo como parte de su estrategia
de litigación y como un vehículo para formular sus posiciones
en controversias jurídicas importantes.

Para los tribunales el *amicus curiae* ha servido como ins-
trumento para ampliar la participación en el proceso deci-
sional. Esto a su vez permite que las decisiones tengan más
legitimidad entre los sectores concernidos. De esta manera los
tribunales han abierto sus puertas para que en asuntos de
gran interés público el mayor número de sectores interesados
pueda contribuir en la formulación de decisiones judiciales.
Por estas razones es que a través de las últimas dos décadas
se ha observado en Estados Unidos un marcado incremento en
la comparecencia de distintas entidades como *amici curiae.*
O'Connor y Epstein, *op. cit.*

Los tribunales se han beneficiado del desarrollo de esta
figura y sus aportaciones al quehacer jurídico han sido incal-
culables. Por ejemplo, en la trascendental decisión de *Mapp* v.
*Ohio,* 367 U.S. 643 (1961), la posición que prevaleció en el
Tribunal Supremo de Estados Unidos —extender el alcance
de la regla de exclusión de la cuarta enmienda a los estados
por vía de la enmienda catorce, revocando para esto a *Wolf* v.
*Colorado,* 338 U.S. 25 (1949)— no fue presentada por el acu-
sado. Quien único solicitó la revocación de *Wolf* v. *Colorado,*
supra, fue la American Civil Liberties Union que compareció
como amigo de la corte. *Mapp* v. *Ohio,* supra, págs. 673–674
n. 5. (Para ilustraciones del uso intensivo del *amicus curiae*
ante el Tribunal Supremo de Estados Unidos véase Abraham,
*op. cit.,* págs. 252–253.) El *amicus curiae* ha sido de particu-
lar ayuda cuando el estatuto es ambiguo, o cuando el tribunal
aún no ha decidido si ha de emitir el auto, o cuando el caso es
excepcional y requiere una consideración cuidadosa; Nota,
*Amici Curiae,* 34 Harv. L. Rev. 773, 774 (1921); Harper y
Etherington, *op. cit.,* pág. 1177; *Second Employers' Liability*

*Cases*, 223 U.S. 1, 16 (1912) ; *The Minnesota Rate Cases*, 230 U.S. 352, 364 (1913).

Aun en casos penales las cortes han permitido la comparecencia como *amicus curiae* en el juicio para favorecer tanto los intereses de los acusados como los del Estado. *United States* v. *Dougherty*, 473 F.2d 1113 (1972) ; *Brown* v. *United States*, 264 F.2d 363 (1959). También en forma limitada se ha permitido la participación del abogado de la perjudicada en un juicio. *People* v. *Gibbs*, 38 N.W. 257 (Mich. 1888). Sin embargo, no se ha permitido cuando se pretende sustituir el fiscal en el juicio. *City of Columbus* v. *Tullos*, 204 N.E.2d 67 (1964).

En *United States* v. *Barnett*, 376 U.S. 681, 683–684 (1964), se autorizó a un *amicus curiae* a solicitar una orden de desacato contra los demandados. En *Tehan* v. *Shott*, 382 U.S. 406 (1966), un prisionero de Ohio llevó un recurso de hábeas corpus a la corte federal. El peticionario solicitaba que se le aplicaran retroactivamente las decisiones de *Malloy* v. *Hogan*, 378 U.S. 1 (1964) y *Griffin* v. *California*, 380 U.S. 609 (1965), que extendían las protecciones de la enmienda quinta a los procedimientos estatales. El tribunal de circuito declaró con lugar la petición. En el Supremo federal se permitió la comparecencia del estado de California como *amicus curiae* en oposición a los intereses del peticionario. El alegato del *amicus curiae* se citó en la opinión del tribunal; *Tehan* v. *Shott*, supra, págs. 418–419. Por último, en *Pennsylvania* v. *Nelson*, 350 U.S. 497 (1956), en un caso penal el Tribunal Supremo federal permitió la comparecencia de varios *amici curiae* que sostenían posiciones contrarias a las del acusado. Las controversias eran estrictamente de derecho.

De la jurisprudencia examinada se desprende que los tribunales en Estados Unidos aceptan peticiones de *amicus curiae* en casos penales con las salvaguardas necesarias para proteger los derechos de los acusados. Entre estas medidas se destacan: la comparecencia del *amicus curiae* no puede versar

594

sobre cuestiones de hecho; no puede usurpar las funciones del fiscal; el interés del compareciente debe ser vital y responder a genuinos intereses públicos. Finalmente, el *amicus curiae* no puede argumentar sobre la culpabilidad del acusado y se limita su comparecencia a cuestiones estrictamente de derecho.

Históricamente el *amicus curiae* ha comparecido a solicitud del propio tribunal o mediante autorización de éste. En términos de su composición tres tipos de *amicus curiae* han comparecido con más frecuencia: los representantes gubernamentales, organizaciones profesionales u ocupacionales y las asociaciones privadas. Angell, *op. cit.*, págs. 1019–1020. Por estar a la entera discreción del tribunal no se ha desarrollado una normativa clara en torno a su concesión.

La Regla 36 del Reglamento del Tribunal Supremo de Estados Unidos, (¹) establece el procedimiento a seguir para so-

---

(¹) Esta Regla dispone lo siguiente:

".1. A brief of an *amicus curiae* prior to consideration of the jurisdictional statement or of the petition for writ of certiorari, accompanied by written consent of the parties, may be filed only if submitted within the time allowed for the filing of the motion to dismiss or affirm or the brief in opposition to the petition for certiorari. A motion for leave to file such a brief when consent has been refused is not favored. Any such motion must be filed within the time allowed for filing of the brief and must be accompanied by the proposed brief. In any event, no such brief shall exceed 20 pages in length.

".2. A brief of an *amicus curiae* in a case before the Court for oral argument may be filed when accompanied by written consent of all parties to the case and presented within the time allowed for the filing of the brief of the party supported and if in support of neither party, within the time allowed for filing appellant's or petitioner's brief. Any such brief must identify the party supported, shall be as concise as possible, and in no event shall exceed 30 pages in length. No reply brief of an *amicus curiae* will be received.

".3. When consent to the filing of a brief of an *amicus curiae* in a case before the Court for oral argument is refused by a party to the case, a motion for leave to file, accompanied by the proposed brief, complying with the 30-page limit, may be presented to the Court. No such motion shall be received unless submitted within the time allowed for the filing of an *amicus* brief on written consent. The motion shall concisely state the nature of the applicant's interest, set forth facts or questions of law that have not been, or reasons for believing that they will not adequately be, presented by the

licitar la participación como *amicus curiae* ante ese foro. Esta regla le da un tratamiento más favorable a una petición de *amicus curiae* cuando el peticionario es una entidad guberna-mental. Según la regla federal una persona o entidad necesita el permiso de las partes para poder comparecer. Si el permiso es negado se debe solicitar permiso del tribunal. Sin embargo, la comparecencia como *amicus curiae* del gobierno de Estados Unidos, de cualquier agencia federal, de un estado, territorio o *Commonwealth*, o cualquier subdivisión de éstos no requiere autorización de las partes. U.S. Sup. Ct. Rule 36 (28 U.S.C.A.). A pesar del lenguaje claro de la Regla 36 se ha in-terpretado que es necesario solicitar permiso del tribunal en esos casos. Véanse: *Brown* v. *Board of Education*, 347 U.S. 483, 496 (1954); Comentario, *The Amicus Curiae*, 55 Nw. U.L. Rev. 469, 475 (1960).

Desde 1926 el Tribunal Supremo federal ha permitido que el Congreso federal comparezca como *amicus curiae; Myers* v. *United States*, 272 U.S. 52 (1926). También se le ha permi-tido a Comisiones de ambos cuerpos comparecer; *The Pocket Veto Case*, 279 U.S. 655 (1929); *Edwards* v. *California*, 314 U.S. 160 (1941); *Edwards* v. *United States*, 286 U.S. 482 (1932). Inclusive se le ha permitido a un grupo de represen-tantes comparecer como *amici curiae, INS* v. *Chadha*, 462 U.S.

---

parties, and their relevancy to the disposition of the case; and it shall in no event exceed five pages in length. A party served with such motion may seasonably file an objection concisely stating the reasons for withholding consent.

".4. Consent to the filing of a brief of an *amicus curiae* need not be had when the brief is presented for the United States sponsored by the Solicitor General; for any agency of the United States authorized by law to appear in its own behalf, sponsored by its appropriate legal representative; for a State, Territory, or Commonwealth sponsored by its attorney general; or for a political subdivision of a State, Territory, or Commonwealth spon-sored by the authorized law officer thereof.

".5. All briefs, motions, and responses filed under this Rule shall com-ply with the applicable provisions of Rules 33, 34, and 42 (except that it shall be sufficient to set forth the interest of the *amicus curiae*, the argu-ment, the summary of argument, and the conclusion); and shall be accom-panied by proof of service as required by Rule 28."

919 (1983), y a un solo legislador. *Henderson* v. *United States*, 339 U.S. 816 (1950). Desde 1935 se les ha permitido a los legisladores federales argumentar oralmente como *amici curiae*, *Jurney* v. *MacCraken*, 294 U.S. 125, 128 (1935).

## II

El Reglamento del Tribunal Supremo de Puerto Rico autoriza la comparecencia ante este foro como *amicus curiae* a cualquier parte "realmente interesada". *Reglamento del Tribunal Supremo de Puerto Rico*, 4 L.P.R.A. Ap. I-A, Regla 43. El lenguaje de nuestra regla es mucho más liberal que el de la Regla 36 del Tribunal Supremo federal. No requiere permiso de las partes y la única condición que se exige es que sea una "parte realmente interesada". Nuestra regla es una de las más liberales y al redactarla aprovechamos la experiencia de otros países que han trascendido el marco limitado del sistema adversativo para aumentar la participación de los amigos de la corte. Nota, *Amicus Curiae Participation, op. cit.*, págs. 868–873; Angell, *op. cit.*, págs. 1024–1028.

Nuestra regla dispone que hay dos maneras de comparecer como *amicus curiae:* por invitación de este Tribunal o a solicitud "de cualquier parte realmente interesada". Su lenguaje neutral no distingue entre los comparecientes. Lo que hay que demostrar únicamente cuando se solicita es que uno es una parte "realmente interesada" en el caso. Este criterio, que es distinto al de "legitimación activa" (*standing*) o al de "intervención", tiene el efecto de permitirle a todo el que demuestra que tiene un interés real en el caso participar como *amicus curiae*. Nuestras interpretaciones no deben socavar el espíritu liberal de la regla, sobre todo cuando no tenemos un problema real de cientos de comparecencias que nos obligue a tomar medidas restrictivas.

Esta filosofía tan liberal de comparecencia como amigo de la corte fue interpretada en *Pueblo ex rel. L.V.C.*, supra. Allí establecimos que para autorizar la comparecencia de un

*amicus curiae* había que considerar "entre otros factores, el interés público del asunto bajo consideración, lo novel de las cuestiones planteadas, el alcance de la adjudicación que haya de hacerse en cuanto a terceros que no son parte en el litigio, las cuestiones de política pública que puedan estar planteadas, la magnitud de los derechos que puedan estar en juego, etc.". Íd., pág. 129.

En vista del espíritu liberal de nuestra regla, reiteramos en esa ocasión que "no puede haber criterios fijos limitativos ni particularizadores de los factores a tomarse en consideración". Reconocimos que "el amigo de la corte puede ser el amigo de una causa, pero ante todo debe ser el amigo y servidor de la causa de la justicia". Íd.

En la mayor parte de los casos la intervención del *amicus curiae* ha sido casi exclusivamente al nivel apelativo. Su comparecencia ha sido mayormente para exponer su posición sobre controverisas de derecho y no para participar en la introducción de la prueba al hacer determinaciones de hecho.

En *Pueblo ex rel. L.V.C.*, supra, págs. 126–127, la solicitud del *amicus curiae* fue de un representante de los perjudicados en el procedimiento que se había iniciado en el tribunal de instancia. Eso nos motivó a afirmar que "su intervención en un procedimiento en primera instancia puede ser deseable en algunos casos, pero debe ser la excepción y no la regla, sobre todo si ha de participar en la gestión de ofrecimiento y aquilatación de pruebas". De esta manera establecimos que no facilitaríamos la comparecencia del *amicus curiae* en los tribunales de instancia para participar en el ofrecimiento de la prueba que utilizaría el juzgador o el jurado para hacer determinaciones a ese nivel adjudicativo.

Tanto de la Regla 43 como de la jurisprudencia se desprende que la concesión del *amicus curiae* no ha de ser automática. Ninguna persona o entidad tiene derecho a intervenir como *amicus curiae*. Su concesión será totalmente discrecional. El tribunal deberá sopesar los intereses envueltos antes

de conceder el permiso y convencerse de que se trata de una parte realmente interesada que esté en condiciones de ayudar a esta curia en su función judicial sin "criterios fijos limitativos ni particulizadores". íd.

Examinado el desarrollo del *amicus curiae*, tanto en Puerto Rico como en otros países, procedamos a resolver si el Senado es "una parte realmente interesada".

### III

En primer lugar el Senado ha solicitado comparecer como *amicus curiae* únicamente ante este foro. No se trata de una intervención en el tribunal de instancia donde en su día se hará una determinación sobre la responsabilidad penal de los acusados.

En estos momentos la inocencia o culpabilidad de los acusados no está planteada. Lo que hay que resolver es si se les puede procesar bajo el Art. 225 del Código Penal. La situación es muy similar a la de *Pennsylvania* v. *Nelson*, supra, donde se permitió la comparecencia de varios *amici curiae* en contra de los intereses del acusado. Tampoco es un caso donde este Tribunal tenga que examinar la prueba ofrecida en el foro de instancia para confirmar, modificar o revocar.

El recurso que está ante nuestra consideración es indudablemente de gran interés público. ¿Puede el Ministerio Público encausar a una persona por cometer perjurio ante la Legislatura bajo el Art. 225 por Código Penal? El proceso penal iniciado en estos casos constituye otra etapa de la controversia pública que rodea los incidentes del 25 de julio de 1978 en el Cerro Maravilla. Lo ocurrido en esa ocasión fue objeto de una intensa publicidad y discusión pública y en diversas ocasiones hemos tenido que resolver controversias jurídicas surgidas tanto en las investigaciones legislativas como en pleitos instados por los afectados. *Soto* v. *Srio. de Justicia*, 112 D.P.R. 477 (1982); *Peña Clos* v. *Cartagena Ortiz*, 114 D.P.R. 576 (1983); *Romero Barceló* v. *Hernández Agosto*, 115 D.P.R.

368 (1984). Aunque los casos ante nuestra consideración son de carácter penal, nuestra adjudicación de la controversia afectará a terceros que no son parte en el pleito. Por la naturaleza del caso penal, las dos partes son el Pueblo de Puerto Rico, representado por el Fiscal Especial Independiente, y los acusados. Sin embargo, la adjudicación de la controversia jurídica sobre el alcance del Art. 225 del Código Penal afectará el desarrollo tanto de la investigación legislativa sobre los sucesos del Cerro Maravilla como otras pesquisas senatoriales. El efecto de esta adjudicación podría ser el debilitamiento de los poderes constitucionales de una de las ramas de este Gobierno. Las cuestiones de política pública planteadas son claras, importantes y particularmente noveles. Nunca antes habíamos tenido la oportunidad de examinar este asunto y las cuestiones incidentales relacionadas con el perjurio ante la Rama Legislativa.

Por otro lado, al considerar comparecencias de la Asamblea Legislativa como *amicus curiae*, debemos hacerlo con la prudencia, el respeto y la deferencia que históricamente han caracterizado nuestra relación con la Rama Legislativa. Por la importancia que tiene la Asamblea Legislativa en nuestro ordenamiento constitucional, sus solicitudes de comparecencias de *amicus curiae* deben ser examinadas con mayor deferencia que las provenientes de otras entidades.

No debemos examinar este asunto con una visión limitada del esquema constitucional de separación de poderes. El fundamento teórico del principio de separación fue el de evitar la concentración de poder y, por consiguiente, la tiranía: ". . . 'El propósito [de la separación de poderes] no fué evitar fricciones, pero, mediante la fricción inevitable incidental a la distribución de los poderes gubernamentales entre tres ramas, salvar el pueblo de la autocracia'." *Banco Popular, Liquidador* v. *Corte*, 63 D.P.R. 66, 71 (1944). En el Estado moderno la separación de poderes conlleva un sistema de contrapesos y de sabia utilización del poder discrecional de cada rama con

el propósito de asegurar un "equilibrio dinámico" que asegure el funcionamiento efectivo del sistema republicano de gobierno. *Banco Popular, Liquidador* v. *Corte,* supra, págs. 71–75; *P.P.D.* v. *Ferré, Gobernador,* 98 D.P.R. 338, 455–456 (1970); *The Federalist,* No. 47 (1788); C. L. Montesquieu, *The Spirit of the Law* (Philadelphia, 1802).

La comparecencia del Senado ante este foro apelativo no tendrá el efecto de usurpar las funciones constitucionales de la Rama Judicial. Su comparecencia no será sobre cuestiones de hecho ni estamos en una etapa adjudicativa de hechos. La determinación final del alcance del Art. 225 del Código Penal es exclusivamente de este Tribunal. Por eso mismo es que el Senado ha recurrido ante esta curia y al hacerlo reconoce nuestra función de revisión judicial. Sin embargo, como el caso plantea cuestiones que afectan el poder investigativo de la Legislatura, recurre legítimamente para expresarnos su interés y su posición en esta controversia jurídica. Al autorizar al Senado a comparecer ante este Tribunal lo que realmente estamos haciendo es solamente facilitando procesalmente a otra rama del Gobierno un instrumento para expresarnos sus puntos de vista sobre las importantes consideraciones de política pública en este caso. En su día será este Tribunal el que decida finalmente la controversia y dictará las normas correspondientes. Un análisis de los intereses envueltos en este caso nos convence de que este Tribunal se ha de beneficiar si se declara con lugar la solicitud del Senado.

La figura del Fiscal Especial Independiente no se vería afectada por la participación del Senado como amigo de la corte. Para que esto ocurriera tendríamos que presumir que los intereses del Senado y los del Fiscal Especial Independiente son los mismos y que su intervención debilita la independencia otorgada por la propia Legislatura en la Ley Núm. 1 de 18 de enero de 1985. Entiendo que al tomar esto en consideración estamos interviniendo precisamente en el proceso decisional de estas entidades y en el campo que tradicional-

mente los tribunales se han abstenido. No nos corresponde a nosotros decidir qué es lo que más le conviene ni al Fiscal Independiente ni al Senado de Puerto Rico.

Además, los intereses del Fiscal Especial y del Senado son diferentes. Para el primero lo primordial de los casos en controversia es que este Tribunal le permita procesar a los acusados por el delito que se les imputa. Para el segundo el interés primordial es que sus facultades y prerrogativas no se vean afectadas. El Fiscal Especial Independiente no es el representante del Senado en este foro. Ni la ley que lo crea, ni la realidad de esta litigación disponen esto. Decir que el Fiscal Especial Independiente es el representante del Senado es equivalente a decir que el Senado puede imponerle a aquél cuál ha de ser su proceder en este litigio. Precisamente por que el Senado no puede imponerle ni solicitarle al Fiscal Especial Independiente que adelante su particular teoría para vindicar los derechos de ese cuerpo es que acude ante nosotros como amigo de la corte.

Tampoco podemos interpretar la comparecencia del Senado como un intento de menospreciar o debilitar el carácter de funcionario *independiente* que inspiró la promulgación del estatuto. Una de las características de la figura del *amicus curiae*, a diferencia del interventor, es que no tiene ningún control sobre el litigio. Aceptar la comparecencia del Senado en nada afectaría la independencia del Fiscal Especial Independiente.

No interpreto la legislación que crea al Fiscal Especial Independiente a los efectos de que son los únicos que pueden comparecer a este foro en una controversia de esta naturaleza. La Ley Núm. 1 concede facultad al Fiscal en "representación del Estado Libre Asociado en todos aquellos asuntos bajo su encomienda en que sea parte o esté interesado el Estado Libre Asociado". Esta disposición constituye una delegación legislativa al Fiscal Especial Independiente para que él pueda representar al Pueblo de Puerto Rico en los procedimientos ju-

diciales. El Senado no acude ante nosotros en representación del Pueblo de Puerto Rico. Acude para representar sus propios intereses que se pueden ver afectados. Se trata de una intervención a nivel apelativo donde se está considerando una controversia exclusivamente de derecho. La comparecencia del Senado no tendrá el efecto de substituir al Fiscal Especial Independiente ni en este foro ni en instancia. Corresponderá a este último la función acusadora en el foro de instancia. Él será el que tomará las decisiones fundamentales de a quién acusar, cuándo, por qué y cómo, y tendrá la responsabilidad de probar su caso más allá de duda razonable.

La ironía de esta petición es que tradicionalmente cuando analizamos el alcance de una ley estudiamos la intención legislativa mediante el análisis sistemático de los informes de las comisiones, los debates camerales y las ponencias de los que comparecieron a las vistas públicas. La comparecencia del Senado como *amicus curiae* podría ser de mucha relevancia si entre otros aspectos nos somete su posición sobre la intención legislativa, el origen de la ley, y su aplicación en estos casos. Denegar el *amicus curiae* para luego estudiar la intención legislativa no es la mejor manera de utilizar nuestro tiempo.

Finalmente, para que tengamos unas relaciones adecuadas entre las tres ramas del Gobierno de Puerto Rico se requiere que cada una reconozca los poderes y las limitaciones de las demás. Aunque constitucionalmente a los tribunales les corresponde decidir los contornos y el alcance de la Constitución y las leyes al formular nuestras decisiones, debemos escuchar las interpretaciones de los otros poderes para adjudicar justamente de acuerdo con la naturaleza de las controversias y las circunstancias históricas. En el pasado este Tribunal ha reconocido los alcances del Poder Legislativo y al hacerlo hemos fortalecido el ordenamiento constitucional. Denegarle ahora al Senado de Puerto Rico la oportunidad de comparecer ante este Tribunal como *amicus curiae* en una controversia

donde se podría afectar el poder investigativo de ese cuerpo es un retroceso histórico.